SEGAL & McMAHAN, CHARTERED
MARK SEGAL, ESQUIRE, #01963
TRUDE McMAHAN, ESQUIRE, #00347
KURT J. WEINRICH, ESQUIRE, #05818
720 South Fourth Street, Ste. 200
Las Vegas, Nevada 89101
702-382-5212
702-383-6063 - FAX
Attorneys for Debtors, William H. and Jenny K. Dull

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

re:                                      )   BK-S 01-13513 LBR
                                         )
WILLIAM H. DULL and                      )   Chapter 13
JENNY K. DULL,                           )   Hearing Date:   October 22, 2001
                                         )   Hearing Time:   1:30 p.m.
SS# 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                          )
   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                           )   **DEBTORS' TRIAL STATEMENT**
               Debtors.                  )
_____          )

COME NOW Debtors, William H. and Jenny K. Dull, by and through their attorney of record, Mark Segal, Esq. of the law firm of Segal & McMahan, Chartered, and for their Trial Statement, respectfully state to the Court as follows:

### THIS IS A CORE PROCEEDING

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title II, referred under subsection (a) of this section, and may enter appropriate orders and judgements, subject to review under section 158 of this title. 28 USC §157(b)(1) Core proceedings include, but are not limited to-matters concerning the administration of the estate...[and] confirmations of plans. 28 USC §157(b)(2)(A) and (L).

### NATURE OF ACTION AND PARTIES' CONTENTIONS

Tamura Corporation of America ("TCA") filed its Objection to Confirmation of Chapter 13 Plan on or about August 7, 2001 ("TCA's Objection to Confirmation"). On August 23, 2001,

-1-

Debtors filed their Response to Tamura Corporation of America's Objection to Confirmation of Chapter 13 Plan and Debtors' Request That Debtors' Plan Be Confirmed or in the Alternative, Debtors' Request for Continuation of Confirmation Hearing Date or Setting of Status Hearing; a Supplement thereto was filed on August 28, 2001 (hereinafter collectively the "Dulls Response to TCA's Objection to Confirmation"). On or about August 28, 2001, TCA filed its Reply to Debtors' Response Re: Objection to Confirmation of Chapter 13 Plan ("TCA's Reply"). Previous to that, on or about August 16, 2001, TCA had also filed its Motion to Convert Chapter 13 Case to Chapter 7 ("TCA's Motion to Convert"). On August 28, 2001, the Debtors filed their Opposition to TCA's Motion to Convert (the "Debtors' Opposition to TCA's Motion to Convert"). At the August 29, 2001 initial hearing on TCA's Objection to Confirmation and TCA's Motion to Convert, this Court scheduled an evidentiary hearing for October 22, 2001 at 1:30 p.m.

In its Objection to Confirmation, Reply, and Motion to Convert, TCA alleges:

1. Based on the totality of circumstances, Debtors' Plan is not proposed in good faith pursuant to 11 U.S.C. §1325(a)(3) and *In re Warren*, 89 B.R. 87 (9th Cir. B.A.P. 1988); (TCA's Objection to Confirmation, p. 12);

2. Debtors have sought to use their Chapter 13 case for the express purpose of discharging a debt otherwise nondischargeable in a Chapter 7 and thus have acted in bad faith for purposes of 11 U.S.C. §1325(a)(3) (TCA's Objection to Confirmation, p. 13); and

3. Debtors filed for bankruptcy primarily to defeat a State Court Arbitration proceeding and so filed their petition in bad faith (TCA's Motion to Convert, p. 5).

Debtors contend the Court should deny both TCA's Objection to Confirmation and Motion to Convert because:

-2-

1. The Debtors' primary reason in filing their Chapter 13 bankruptcy proceeding was to allow them to best position themselves to discharge or otherwise limit the amount of secured, priority and unsecured general income tax, interest, and penalty claims potentially due to the Internal Revenue Service for the tax years 1994 through 2001;

2. No part of the Debtors' pre-petition conduct that was integral to the essence of the bankruptcy case was such as to support a finding by the Court that Debtors filed their petition in bad faith and/or did not propose their Chapter 13 Plan in good faith;

3. The Debtors, by proposing to pay their creditors their entire disposable income for a period of sixty (60) months, plus an additional sum from their excluded/exempt assets such that all creditors whose claims are allowed would be paid a total sum equal to the liquidation value of the property included in the Debtors' bankruptcy estate, but not less than $212,500.00, have thereby satisfied the good faith test of 11 U.S.C. §1325(a)(3);

4. The assertion by the Debtors in this bankruptcy of their Fifth Amendment right against self-incrimination, when measured against the I.R.S. review of their Federal income tax returns filed for the years 1994-1998 and the threatened indictment of Debtor William H. Dull for criminal tax matters, is not such as to support the drawing by this Court of an adverse inference or any other conclusion against the Debtors leading to a finding that Debtors filed their petition in bad faith or that Debtors did not propose their Chapter 13 plan in good faith.

5. The proposal of a Chapter 13 Plan cannot be found to be lacking of good faith where a disputed claim which, if allowed, would be non-dischargeable in a Chapter 7 bankruptcy proceeding is dischargeable in the Chapter 13 bankruptcy and the Chapter 13 debtor seeks to discharge or otherwise limit the payment of such a claim.

-3-

## STATEMENT OF FACTS

1. The Debtors filed a Chapter 13 Bankruptcy petition on April 16, 2001 (BK-S-01-13513 LBR).

2. The Debtors filed the balance of their Chapter 13 schedules, plan and related submissions on June 1, 2001 (pursuant to Court-granted extensions to file).

3. Prior to the submission of Debtors Schedules of Personal Property, Bankruptcy Counsel for the Debtors hired Appraiser Daniel Watson to value as much of that property as he could. In submitting such Schedules and valuing the property contained therein, Debtors relied solely on the values provided by Mr. Watson for the property he appraised.

4. A series of amendments to Debtors' Schedules were filed:

    (a) to correct typographical, one digit numerical errors made in
        (1) Debtor's home address,
        (2) Debtor-William Dull's social security number and
        (3) the address of one of the real estate parcels sold by Debtors within one (1) year of filing their bankruptcy petition;

    (b) to list
        (1) movant as a disputed, unliquidated, contingent creditor at a claim value of $0.00,
        (2) Debtors' having clothing of a value of $2,000.00 and
        (3) changes in the nature of and dollar value of assets claimed to be exempt; and

    (c) to list the value of Debtors' pension funds otherwise claimed to be property excluded from the bankruptcy estate.

5. On or about April 6, 2000, Debtors commenced a civil arbitration proceeding against TCA in California. This was in response to a civil action TCA filed against Debtors on November 17, 1999 and in the alternative to answering the Complaint filed by TCA.

6. On April 17, 2001, a deposition of William H. Dull was scheduled to be held in the California contested arbitration proceeding between movant and Debtors.

-4-

7. On October 25, 2000, Debtor William H. Dull, through his counsel, was notified by the United States Department of the Treasury, acting through the Internal Revenue Service, Criminal Investigation Division (hereinafter, along with the Office of the United States Attorney, Central District of California, individually and collectively the "Tax Authorities"), that Debtors' federal income tax returns filed for the tax years 1994-1998 were under review; that Debtor William H. Dull was the object of a criminal tax investigation; and that the Tax Authorities were considering bringing before a United Stated Grand Jury a request to indict William H. Dull for criminal violations of the Internal Revenue Codes for the tax years 1994-1998 (hereinafter the "Threatened Indictment").

8. The inquiry by the Tax Authorities was instituted based on information provided to them by Tamura Corporation of America and its authorized representatives.

9. Subsequent to the receipt of the notice of the Threatened Indictment, the Tax Authorities and counsel for William H. Dull have had numerous discussions regarding the Threatened Indictment and on numerous occasions, covering in total the period from April 12, 2001 through December 11, 2001, counsel and the Tax Authorities have agreed to toll the running of various criminal statutes of limitation to allow them to continue review of the tax matter to permit the parties to pursue negotiations and discussions with regard to a possible disposition of charges in the case. However, nothing limits the right of the Tax Authorities to seek an indictment against William H. Dull at any time.

### **CONTESTED ISSUES OF LAW**

The contested issues of law in this case are:

1. Whether Debtors have proposed their Plan in good faith pursuant to 11 U.S.C. §1325(a)(3);

-5-

2. Whether Debtors filed their Chapter 13 Petition in bad faith; and

3. Whether Debtors' assertion of their Fifth Amendment privilege against self-incrimination in order to protect their rights in a threatened criminal tax proceeding was so egregious as to require the Court to draw an adverse inference against the Debtors in its process of determining whether the Debtors' Chapter 13 Petition was filed in bad faith and/or that their Plan was not proposed in good faith.

### SUPPLEMENTAL MEMORANDUM OF AUTHORITY TO DEBTORS' RESPONSE AND SUPPLEMENTAL RESPONSE TO TCA'S OBJECTION TO CONFIRMATION AND TO DEBTORS' OPPOSITION TO TCA'S MOTION TO CONVERT

The Debtors hereby incorporate their Response and Supplemental Response to TCA's Objection to Confirmation and their Opposition to TCA's Motion to Convert, including all Exhibits attached thereto.

1. A GOOD FAITH ANALYSIS UNDER 11 U.S.C. §1325(a)(3) AS EXPANDED BY *IN RE WARREN* IS NOT APPROPRIATE OR NECESSARY IN THE CASE AT BAR

That the Debtors have satisfied the "best efforts" test is clearly shown by their Plan electing to pay $212,500.00 over sixty (60) months. This is enough to satisfy the traditional "good faith" test of 11 U.S.C. §1325(a)(3). In deviating from the application of the traditional test and indulging in an expansion of the factors to be looked at to apply the test, the *Warren* Court, 89 B.R. 87 (B.A.P. 9th Cir., 1998), cited and relied upon cases all of which involved a prior judicial or similar finding, concession, or admission by the debtor that a ground for non-dischargeability of a claim existed if that claim was filed in a Chapter 7 proceeding. See *In re Kourtakis* 75 B.R. 183, 188 (Bankr. E.D. Mich. 1987) (jury verdict entered against debtor for criminal conduct); *In re Brock*, 47 B.R. 167, 169-170 (Bankr. S.D. Cal.1985) (embezzlement judgement entered against debtor); *In re Hale*, 65 B.R. 893, 895-897) (Bankr. S.D. Ga. 1986)

-6-

(student loan debt); *In re Meltzer*, 11 B.R. 624, 628 (Bankr E.D. N.Y. 1981) (judgement against debtor for unpaid parking violations) . But it was only a combination of nominal payment and a previously determined basis for Chapter 7 non-dischargeability that caused the Court to expand its inquiry. It is clear from the cases relied upon in *Warren* that nominal payment is a pre-requisite for the further application of the *Warren* factors. It would be stretching the boundaries of reasonableness to allow the *Warren* standards to be invoked upon the mere unproven allegation of fraud. Not only does a "nominal" payment not exist in the case at bar but Debtors have also proposed to pay a minimum of $212,500.00, over a period of sixty (60), rather than thirty-six (36) months, up to a maximum of the full liquidation value of their included property, currently in excess of $265,000.00, if necessary, to satisfy priority claims in full and to pay a dividend to unsecured general creditors. Finally, as previously stated in Debtors' Response to TCA's Objection to Confirmation (at pp. 6-8, ¶s 8-10), even if TCA's claim were determined to be non-dischargeable in a Chapter 7, such determination would not disqualify the Dulls from proceeding under Chapter 13.

2. THE PRE-PETITION ALLEGATIONS MADE BY TCA IN THE PENDING STATE COURT AND ARBITRATION MATTERS ARE NOT RELEVANT TO THE ISSUE OF WHETHER THE DEBTORS HAVE FILED THEIR PETITION IN BAD FAITH

Not any and all pre-petition conduct is relevant in determining whether a chapter 13 bankruptcy petition has been filed in bad faith. If this were not true, a debtor's conduct underlying any creditor's pre-existing unproven claim could be enough to find a petition had been filed in bad faith, such as the unproven claims made by Movant in its California case. Yet how could this be when it is clear the existence of various types of proven pre-petition conduct giving rise to valid non-dischargeable Chapter 7 claims is not a bar to a Chapter 13 bankruptcy discharge of those same claims. See, e.g., the "super discharge" portion of 11 U.S.C. §1328(a)

-7-

which specifically allows the discharge of those debts described in §§523(a)(2)and (4). Debtors submit it is only conduct that is essential to the integrity of the bankruptcy case itself that should be viewed in determining bad faith. See, e.g. *In re Elisade* 172 B. R. 996, 1000 (Bankr. M.D. Fla 1994) ("Bad faith filing of a bankruptcy petition involves using the process in such a way that the underlying policy securing an orderly and fair adjustment of the relationship between debtor and creditors cannot be realized".) (citation omitted). Debtors further submit that when measured against the factors in *In re Leavitt*, 171 F.3d 1219 (9th Cir. 1999), bad faith does not exist in the case at bar. The conduct Movant seeks to introduce in the case at bar, although essential to the proof of its claim, does not go to the heart of the bankruptcy process itself and is not comparable to the bankruptcy proceeding conduct which the Courts have recognized as being indicative of bad faith. Cf. *In re James*, 2001 WL 333022 (Bankr. D. Idaho, 2001) (Confirmation denied, but debtor given additional opportunity to propose good faith plan).

3. THE ASSERTION OF THE FIFTH AMENDMENT PRIVILEGE

Mr. and Mrs. Dull asserted their privilege against self incrimination, under the Fifth Amendment of the United States Constitution, Article I, Section 15, Clause 6 of the California Constitution, and Section 940 of the California Evidence Code, only as to those subjects where TCA threatened to refer them for criminal prosecution in order to gain leverage during civil settlement discussions.[1] The pending Tax Authorities investigation and TCA's threats to provoke a criminal prosecution against the Dulls provided ample grounds to assert the privilege. *See Estate of Fisher v. Commissioner of Internal Revenue*, 905 F2.d 645 (2nd Cir. 1990) (even

---

[1] These subjects were raised in both deposition questions and document demands. Mr. and Mrs. Dull have the right to assert their privilege in response to document demands, because it is well settled that "the act of producing evidence...has communicative aspects of its own, wholly aside from the contents of the papers produced." Fisher v. United States, 425 U.S. 391, 412 (1976)."

-8-

though IRS Criminal Investigation Division represented that petitioner was not currently being investigated, petitioner was still entitled to assert his privilege against self-incrimination where there was a reasonable probability that an answer would tend to incriminate the witness); *United States v. Miranti*, 253 F.2d 135, 139 (2nd Cir. 1958) (the assertion of the privilege does not depend on the trial court's assessment of the likelihood of prosecution).

The subjects to which the Dulls asserted their privilege involve the alleged scheme to obtain reimbursement from TCA for alleged personal expenses and to divert business from TCA to other companies. All of this alleged conduct occurred pre-petition and has no relevance to the administration of the bankruptcy estate. To the extent the Court deems any of the issues underlying TCA's claim relevant to the good faith determination, nothing prevents TCA from introducing their own evidence in a separate proceeding in an effort to prove this alleged wrongful conduct. However, the prior resolution of the underlying claims is not a prerequisite to confirmation nor is it essential to maintaining the integrity of the bankruptcy process. Thus, Mr. and Mrs. Dull have not prejudiced TCA in any way by asserting their privileges.

Mr. and Mrs. Dull provided deposition testimony to TCA about all of the issues relevant to the administration of their Chapter 13 plan. They testified about the assets in their possession and the value of those assets. They testified about their current and expected future income. They testified about the information contained in their bankruptcy petitions.

Debtors have a right to assert their privilege against self-incrimination in bankruptcy proceedings. *McCarthy v. Arndstein*, 226 U.S. 34 (1924). Where, as here, Debtors have provided sufficient information to permit the effective administration of the bankruptcy estate, their assertion of a privilege should not bar them from relief under Chapter 13. *See In re Wincek*, 202 B.R. 161 (Bankr. M.D. Fla. 1996) (assertion of Fifth Amendment privilege not automatic bar

-9-

to Chapter 13 relief unless it makes administration of the estate impossible); *In re Connelly,* 59 B.R. 421 (Bankr. N.D. Ill. 1986) (court should not impose adverse economic consequences because of the assertion of the Fifth Amendment privilege unless the blanket assertion of the privilege makes administration of the estate impossible).

TCA contends that the court should draw an adverse inference against Mr. and Mrs. Dull because they asserted the privilege, citing various federal court opinions that give the court discretion to do so. (TCA's Reply p. 3) In this context, there are two reasons to reject this contention.

First, Mr. and Mrs. Dull asserted their privilege in regard to allegations of fraud and breach of fiduciary duties arising under California state law. Rule 501 of the Federal Rules of Evidence provides that when, as here, the cause of action arises under state law, the privilege of the witness "shall be determined under State law." Unlike federal law, California law prohibits the trier of fact from drawing an adverse inference against a party based on the assertion of a privilege. *See* Cal. Evid. Code §913(a)[2]; Comment-Assembly Committee on Judiciary, Cal. Evid. Code §913 ("It is clear that, in civil cases as well as criminal cases, inferences may be drawn only from the evidence in the case, not from the claim of privilege [against self-incrimination]."). Thus, no adverse inference may be drawn from the Dulls' assertion of the privilege in the context of TCA's state law claims of alleged pre-petition misconduct.

Second, to the extent the court chooses to apply federal law, the cases provide that the federal court may draw an adverse inference, not that it must. *United States v. Stelmokas,* 100 F.3d 302, 311 (3rd cir. 1996) (if there is independent evidence to support inference, court may draw adverse inference against party asserting privilege). The decision to draw an inference of

-10-

any sort depends on whether the surrounding circumstances show that the inference is valid. Here, however, Mr. and Mrs. Dulls' assertion of the privilege does not tend to demonstrate they engaged in the conduct TCA alleges. During civil settlement discussions regarding TCA's state law claims, TCA attorneys threatened to initiate a criminal investigation against the Dulls if they did not accede to TCA's civil settlement demands. When the Dulls refused to submit to TCA's extortionate demands, TCA fulfilled its threat and provided information to the federal authorities. In this context, there are a host of valid, strategic reasons that Mr. and Mrs. Dull would not want to provide information relevant to their defenses to TCA in advance of their criminal trial. Accordingly, no adverse inference should be drawn against Mr. and Mrs. Dull here.

Based on the foregoing, Debtor submit their Chapter 13 Plan should be confirmed.

Respectfully Submitted,

SEGAL & McMAHAN, CHARTERED

By_____
Mark Segal, Esquire
Attorney for Debtors

---

[2] Cal. Evid. Code §913(a) states:

If in the instant proceeding or on a prior occasion a privilege is or was exercised not to testify with respect to any matter, or to refuse to disclose or to prevent another from disclosing any matter, neither the presiding officer nor counsel may comment thereon, no presumption shall arise because of the exercise of the privilege, and the trier of fact may not draw any inference therefrom as to the credibility of the witness or as to any matter at issue in the proceeding.

-11-

## LIST OF WITNESSES

The Dulls expect to call the following witnesses:

1. William H. Dull

    209 N. Buteo Lane

    Las Vegas, NV 89144

2. Jenny K. Dull

    209 N. Buteo Lane

    Las Vegas, NV 89144

3. Dan Watson

    Las Vegas Auction

    2245 North Nellis Boulevard

    Las Vegas, NV 89115

4. Stephen A. Mansfield, Esquire

    Akin, Gump, Strauss, Hauer & Feld, L.L.P

    2029 Century Park East, Suite 2600

    Los Angeles, CA 90067

5. Mario Nicoletti

    283 Pear Meadow Street

    Henderson, NV 89012-3444

**EXHIBITS**

A. Voluntary Chapter 13 Petition with Schedules D, E, F filed on 4/16/01

B. Amendment to Bankruptcy Petition with Schedules A, B, C, D, E, F, G, H, I, J, Statement of Financial Affairs, Chapter 13 Plan filed on 6/1/01

C. Amendment to Bankruptcy Petition correcting Social Security Number filed on 6/18/01

D. Amendment to Bankruptcy Petition with Amended Statement of Financial Affairs filed on 7/25/01

E. Amendment to Bankruptcy Petition with Schedule J filed on 8/9/01

F. Amendment to Bankruptcy Petition with Schedule F filed on 8/28/01

G. Amendment to Bankruptcy Petition correcting one digit typographical error in address of William H. and Jenny K. Dull filed on 10/9/01

H. Amendment to Bankruptcy Petition with Amended Schedule B and C filed on 10/12/01

I. Amendment to Bankruptcy Petition with Amended Schedule B and C filed on 10/17/01

J. Chapter 13 Plan #3 filed on October 17, 2001

K. Storage Agreement between William H. Dull and Storage One (dtd 2/16/01)

L. Unanimous Written Consent in Lieu of Special Meeting of Board of Directors of TRC West a.k.a AALTAM, Inc. (dtd 1/27/99)

M. Unanimous Written Consent in Lieu of Special Meeting of Board of Directors of TRC Manufacturing Inc. (dtd 1/27/99)

N. Security Agreement and Secured Promissory Note (dtd 2/28/99) entered into by AALTAM Inc., a.k.a. TRC West and TRC Manufacturing Inc., in favor of William H. and Jenny K. Dull

O. Security Agreement and Secured Promissory Note (dtd 2/1/99) entered into by Thordarson, Inc., in favor of William H. and Jenny K. Dull

P.  Uniform Commercial Code Financial Statement (dtd 1/28/99) for AALTAM, Inc., a.k.a. TRC West

Q.  Uniform Commercial Code Financial Statement (dtd 1/28/99) for TRC, Manufacturing Inc.

R.  Uniform Commercial Code Financial Statement (dtd 2/1/00) for Thordarson, Inc.

S.  Las Vegas Auction Appraisal Report on Personal Property located at 209 N. Buteo Woods prepared at the request of Mark Segal, Esquire (dtd May 22, 2001).

T.  Affidavit of Mario P. Nicoletti, Sole director and officer of Thordarson, Inc. (dtd 8/23/01)

U.  Affidavit of Mario P. Nicoletti, Sole director and officer of TRC Manufacturing Inc. (dtd 8/23/01)

V.  Affidavit of Mario P. Nicoletti, Sole director and officer of AALMAG, Inc. (dtd 8/23/01)

W.  IRS Proof of Claim filed on or about 5/2/01

X.  Arbitrator's Order Denying TCA's Motion for Summary Adjudication (dtd 12/1/00)

Y.  Arbitrator's Order Denying TCA Discovery Requests and upholding assertion of Fifth Amendment Privilege by Dull (dtd 12/4/2000)

Z.  Declaration of Attorney Robert B. Humphreys (dtd 8/21/01)

AA.  Declaration of Attorney Stephen Mansfield (dtd 11/6/00)

BB.  Washington Mutual Bank - Statement of Account for nos. 0038288551 and 0033856998 on home mortgages, for the period March 23, 2001 through April 23, 2001.

CC.  Washington Mutual Bank - Statement of Account for checking acct. nos. 383-266784-0 and 198-825219-3 for the period March 23, 2001 through April 23, 2001.

DD.  Wells Fargo Checking Account Statement no. 083-2521728 for the period April 11, 2001 through May 10, 2001

EE.  Wells Fargo Savings Account Statement no. 683-2670061 for the period April 11, 2001 through May 10, 2001.

-14-

1  Dated this 17th day of October, 2001.

Respectfully Submitted

SEGAL & McMAHAN, CHARTERED

By_____
Mark Segal, Esquire
Attorney for Debtors

-15-